And with my panelist's indulgence, we'll just forge ahead to the third case, 21-10285 Fuerst v. The Housing Authority of the City of Atlanta. We have Mr. Knapp here for the appellants, Mr. Wilson for the appellees. Mr. Knapp, you can proceed when ready. Thank you, Your Honor. May it please the Court, my name is Halsey Knapp and I have the privilege of representing Karen Fuerst. Ms. Fuerst is here in the court in the back row and is a distinguished attorney. In the district court, the appellant, Ms. Fuerst, alleged that she was entitled to the protections of the National Defense Authorization Act as a whistleblower due to her warnings that she gave to her client, the Atlanta Housing Authority, leading up to the months of March 2018, whereas a required financial closing under a HUD $30 million choice neighborhood grant. If you affirm the district court's dismissal of this complaint, and unlike the cases we've had before, you have open water here. There is no controlling authority, there is very little authority under the statute at all, and that that exists, I believe, offers little guidance to the questions we have here before us. The statute itself is the primary and best source for evaluating the motion to dismiss. The 11th Circuit will be dissuading whistleblowers to come forward of federal grantees if, in fact, this motion to dismiss is sustained. Let me ask you, let me ask you, I'll just say this is my problem with with your argument, and so this is your chance to explain to me why this is not a problem. It just seems like the facts of what Ms. Furst did here, which is to, in your complaint, you used the word protest, you know, contest, advise this board about this contract, are just not whistleblowing. She didn't, you know, and I think whistleblowing, and when I look at the statute, it just seems to cover someone who, I mean, it says discloses information, it's someone who brings something to light that would otherwise not be brought at light, and it seems like what she's doing here is protesting a decision that the board and the CEO are going to make in front of the board and the CEO, you know, there's no one, who, who, how was she disclosing information or bringing something to light? To understand this, you have to understand the relative disparities of knowledge and experience by the two principles in this decision. You had Ms. Furst, who has been practicing law since 1983, had been at AHA seven years. She was the draftsperson to the 2011 amendments to the revitalization agreement, which is the development agreement itself that existed between the Atlanta Housing Authority and the integral developer. Ms. Buell, who is the politically appointed person to the organization, was not there. Ms. Furst worked with Renee Glover, and this is sort of an Atlanta narrative that probably Judge Branch is more familiar with, but the Atlanta Housing Authority went through a dramatic transformation in changing how you approach public housing. Instead of building these massive, low-income, unmixed neighborhoods, they came up with a way to put together mixed neighborhoods, mixed developments, and central to that was the ability to use low-income tax credits. They took about 40% of the project to put a sandwich of tenants in place in a place where traditional lenders and traditional investors would not put money. You had the piece that HUD would pay, 20% off the top, those are the low-income, HUD's already paid for those, that has already been built at the University Homes. You had the private partnership on the back end, traditional money comes in, they'll pay for that, they'll sell those at market rates, and everyone makes money. But in between, there's another 40%. It's the subsidized housing for people who aren't low-income, and the only way to finance that is with these low-income tax credits. This model was built in this housing authority with Ms. Furst and with its prior director, Renee Glover. So, when this issue comes up with, in essence, a neophyte, not understanding the relationship of why you have to honor these low-income tax credits, because if you don't take down your credit within the time period allowed by the Internal Revenue System, you lose it. And if you lose it, then you don't have the right to, in fact, apply for credits again for several years. Understand, in 2016, the Atlanta Housing Authority used $28 million worth of low-income tax credits in its various redevelopment efforts across the city. So, just to try to loop this back to Judge Brasher's question, because you have limited time, I mean, was she, in bringing this information, I don't want to say to light, to bear, was she telling the board something it couldn't have known? Which is what I take the thrust of Judge Brasher's question to be. Was she, like, shining light on something that other people didn't know? Or was she just saying, hey, everybody knows about this, but this is a terrible idea? No, she was in, there was various incidences where she's interrelating with, not necessarily the board, but with Ms. Buell, the head of the Atlanta Housing Authority, telling her that this action, that she, you know, the application for the low-income tax credits had already passed the board years ago. It has to first be approved by the Atlanta Housing Authority before it can go to the DCA, which is the person that grants those applications. The grant from HUD has a deadline of March 28th for funding. That is known. What Ms. Buell was proposing was to pretend that those approvals had never been given, to use that as a way to leverage a political dispute that was going on between the developer and the then-mayor. Now, and just to, and so Ms. First said, don't do that, that's a bad idea, right? I mean, is that, okay, what did she say? That would be a violation. Yeah, a violation of law. I mean, we've got the privilege issue here. It gives me some hesitation. You can just speak generally about it. I mean, and I guess that's what's odd to me. I just, when I think of, so for example, you know, if she's, I guess she's blowing the whistle to the person who is doing the thing that she says is an abuse of authority, a gross waste, a gross mismanagement. That doesn't seem like blowing the whistle. The quintessential whistleblower is the Facebook woman, right? She goes to Congress and the Wall Street Journal and says, sort of like, holy cow, get a load of what Facebook is doing and get a load of what they know that Instagram, how Instagram is affecting young teen girls, right? The Facebook woman didn't go to Mark Zuckerberg and say, hey, what you're doing with teen girls on Instagram is not a good idea. This is, I think, Judge Brasher's question. Well, that's not the, we're glad the Facebook woman came forward, trust me. But that's not the only form a whistleblower can take. She went to HR. She went to the head of HR as well. And the only person that was senior to her, really, in this organization was, in fact, Ms. Buell. And so she went directly to her as well. And so you and I would want to hear from some subordinate, if they had an issue with us, to bring it to us. The fact, it doesn't, a whistleblowing complaint does not have to go to an outside agency or to the law enforcement. Yeah, and I agree with that under the statute. I guess my, and so we're trying to interpret gross mismanagement, gross waste, abuse of reasonably believes as evidence. These are sort of the key phrases from the statute. And I guess just my thinking is that in defining gross mismanagement, gross waste, abuse of authority, it just seems like it would be odd if the definition of those were the kinds of things that you would go to the person who is doing the gross mismanagement. That makes it, I mean, some of these courts have said, well, we're not just, we're not interested in what needs to be done. We're interested in sort of truly problematic behavior. And it seems odd to me if truly problematic behavior would be evidenced by going to the person that you think is doing the behavior and just protesting that you don't like it. You think it's a bad idea. Well, here, the issue is gross mismanagement. Gross mismanagement means it's management in the first instance. The question is, how do you differentiate between a management disagreement and gross mismanagement? And that's a question of scale. And you measure scale by the consequences of the issue that's being decided. And the consequences of the decision here was no low income tax credits for three years to the Atlanta Housing Authority and its total inability to meet its mandated requirements under the Georgia statute to build affordable housing. It was a draconian consequence that went to the fundamental purpose of the agency. That is why it's gross mismanagement and not just a management dismission or disagreement about how to do things. So your point is that, your point is that the thing that makes this gross mismanagement as opposed to mismanagement, we would evaluate the grantee or recipient of the contract and the degree of importance the management decision is to the grantee of the contract? To the fundamental purpose of the organization. Why would it not be a question of the importance to the federal agency that is giving the money or the money? It seems odd to me, for example, I mean, it seems odd to me that it would be gross mismanagement if you did something that resulted in a federal agency pulling a very small contract in the grand scheme of things, even if that was a large thing for the grantee of the contract. Does that make sense? Well, first of all, HUD did object, and I footnote that in my brief, if not in the complaint about HUD objected to how Atlanta Housing Authority did this. And that's a breach of the agreement, the grant agreement between HUD and Atlanta Housing Authority. And I had another point that I just lost, I lost. That's all I got on that, Your Honor. Happens to the best of us. Your time is kind of running down anyway. You can regather your thoughts and tell us on rebuttal if you'd like. That would be good. Judge Branch, you have any questions? Oh, yeah, Judge Branch, very well. Thank you. Thank you so much. Judge Branch? Yes, it seems to me that the district court was struggling because you never pointed to anything in the HUD grant besides the newspaper article that supported your position. Is this an issue for discovery, or is this a pleading failure? Can you speak to that issue? Yes, Your Honor, thank you. I believe it's a matter of proof to be brought before the, as the facts are developed, we allegations to the complaint make clear that these violations are, it went to the funding of the Choice Neighborhood Grant from HUD. And that that was postponing that closing on March 28th, which would have been detrimental to, it would have been a breach of the grant, as well as a default under the low income tax credits caused harm to the organization. And that bringing that to the attention of those organizations, she was then put on leave. Remember, she was isolated from the process, the process where she was the lead real estate lawyer who knew the technical nature of this area. If it was a, I have to categorically disagree with Judge Brasher, this is a small contract. This $30 million grant is the biggest contract that Atlanta Housing Authority has ever gotten. It was fundamental to what was going on there and through the citations we make throughout the complaint in our briefs to public sources, it's a brouhaha that's been an embarrassment to the city for quite some time. And with that, I appreciate your attention to this matter. Very well. Mr. Wilson, we'll hear from you. May it please the Court and thank you, Your Honors. While certainly I have a great deal of anxiety with respect to being before a court such as this on an issue such as this, there was an equal amount of anxiety this morning with respect to whether or not I could get into a suit after two and a half years. Getting to the heart of why we believe that the district court made the appropriate decision is the fact that this arose with respect to a motion to dismiss with respect to plaintiff's complaint. And what plaintiff's complaint conspicuously misses is any allegation with respect to what constituted the alleged gross mismanagement with respect to the 2015 housing choice grant. If you presume that that is the grant that the plaintiff is complaining about, nothing with respect to an alleged waste of federal funds, nothing with respect to an abuse of authority with respect to that contract or grant, nothing with respect to an allegation of a specific danger to public health or safety, nothing with respect to a violation of law, rule, or regulation related to the contract or the grant. Can I ask you a quick question? Maybe this is what you're getting at. But it seems to me that the district court might have made a couple of missteps in how it construed the statute at least. I'm not sure it matters to the ultimate result, but the district court said a couple of things. One, the district court said at page 11 that first must prove that she was an employee of a government contractor. You don't read the statute that way, do you? I mean, it does refer to specifically to an employee of a dot, dot, dot, grantee. Yes, I would concede that the statute clearly says an employee of a contractor, grantee, subgrantee, the statute clearly addresses that you need not be an employee of the government contractor. And then separately, and frankly, I think differently, the district court says at page 14 that the NDAA provides no remedy, quote, for a government employee who questions the agency's receipt of federal funds. I'm actually not sure that's right either because it seems like it does protect employees, even of grantees, who are objecting to things with respect to the grants, not with respect to the contract specifically. Well, as indicated by opposing counsel, this is a case where there has not been a lot of that was passed in 2013. I mean, I guess I'm just reading the statute. It says an employee of a dot, dot, dot, grantee may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph two information that the employee reasonably believes is evidence of gross mismanagement of a federal dot, dot, dot, grant. Right. Right. But I think you have to look at this particular portion of the statute, 4712, in context. 4712 was an expansion of contractor protections. And other courts have said you have to look at it in the context of 4705, which describes what that contractual relationship is. And that contractual relationship is the contract between the federal government and the contractor or the grantor with the federal government. In this instance, there is nothing in the complaint which would suggest that there has been any kind of disclosure or whistleblowing with respect to the contract between the federal government and the housing authority. So I'll just tell you that for my money, I think your better argument is the one that Judge Brasher was pursuing, that this simply doesn't rise to the level of gross mismanagement. Because I actually think on the statutory language, employees of grantees are covered and employees of grantees griping about grantee issues are covered. Now the question becomes whether or not the supposed disclosure was about gross mismanagement or not. Right. Well, we will not concede that the other courts, including the Sloan Court in the 11th Circuit that has looked at this and have made a determination that this statute only applies to persons who are raising issues with respect to the contract between the federal government and the contractor or grantee. But the court also said this is not gross mismanagement. There is nothing in Appellant's complaint where she sets forth what has been grossly mismanaged. And her protestations basically simply go to the fact that she disagreed with an approach that her superiors determined was the most appropriate approach in terms of an agreement between the housing authority and a private contractor, not between the housing authority and HUD. So we would submit that under those circumstances, it's certainly where in her complaint, she admits that, one, there is absolutely nothing wrong with the housing authority seeking to renegotiate the terms of its contract with the private contractor. Two, she says that the federal funds had already been expended by the time she raised the protest. So there was nothing that she could allege with respect to gross mismanagement of those funds because they had already been dispersed. And thirdly, her complaint includes an OIG determination that since the disclosures which she cites in her complaint did not meet the level of the definition of prohibited disclosures, she was not a whistleblower. So looking at her complaint in its entirety, giving her the benefit of the doubt, providing all inferences in her favor, her complaint does nothing more than set forth legal conclusions that she is, in fact, a whistleblower. What do you say about what I think opposing counsel's sort of strongest and most forceful argument is, which is that this was sort of a scheme set up, right? You've got money from HUD coming to the Atlanta Housing Authority, and then the ultimate development itself relies on this contract with the third party. And that the CEO's decision to potentially breach this contract with the third party as part of a renegotiation deal put the whole thing into jeopardy. And so the sort of the gross mismanagement of it is not so much that the action itself was just, you know, far outside the realm of normal business activity, but that by threatening this contract with this third party, the whole scheme could fall, that nothing would be built, and all this money would be wasted or whatever. What do you say about that? Under those circumstances, I think any attorney, any in-house attorney who would take the position that their superiors had a disagreement with the advice that they were rendering could potentially be a whistleblower under that expansive definition of the statute. Even if you look at the Amwinga case, which was cited by appellant, there the plaintiff was a compliance officer, and the court, when analyzing her FCA claims, said that the employee must overcome the presumption that she is merely acting in accordance with her employment obligations to put her employer on notice. This is all that is taking place in this case. As an attorney involved in real estate, the only thing that appellant here was doing was putting her employer on notice with respect to her obligations in her position. It does not constitute whistleblowing. She must go further, which she did not do here. Okay. I mean, what would you, so the statute says gross mismanagement, gross waste, abuse of authority. I guess my trying to figure this out is, so obviously normal mismanagement, normal waste, abuse of authority, gross waste, right? Those are not covered, and so opposing counsel gives this sort of definition of gross as significant, I think, is his point. What would your definition be? How do we distinguish mismanagement from gross mismanagement? Well, I think that if you look at the statute and look at the cases, the cases that have looked at gross mismanagement have sort of said that it has to fall within the framework of arbitrary and capricious, and there is nothing in this complaint, which the district court dismissed, which would suggest that any actions that were taken fall into that  This is nothing more than management taking a position that we think we can get a better deal. In fact, we think getting this better deal will put us in a position where we can build more housing, where Atlanta Housing can have more money to complete its mission, and simply because appellant here disagreed with that approach, that does not meet the definition of gross mismanagement. It is merely a difference of opinions with respect to how the entity should proceed in its best interest. This is sort of a throwback question, I guess, for all of us to law school, but I mean, when I was thinking about this, is there some analogy here to like the business judgment rule in that the movers and shakers inside a corporation are just entitled to a presumption of sort of competence and regularity, and that it has to be rebutted by a fairly high standard? Is that basically what gross mismanagement is? Well, I think in this context, appellant would have to be able to demonstrate that there has been some type of violation, some violation of a rule, policy, procedure, specific contract language to indicate that this is what has been grossly mismanaged. In the other cases where there is a conversation related to gross mismanagement, the cases all dealt with fraud. There was clear evidence that something fraudulent had taken place. Payments had been made that should not have been made. Taxpayers were given breaks that should not, they should not have been given. That is not present here. The only thing that is present here is a disagreement, a difference of opinion, and I don't believe, and I don't think that this court should accept the fact that a difference of opinion constitutes gross mismanagement. The trick for me is, I think you're right, and my guess is that your adversary would admit that a mere difference of opinion isn't good enough, but I'm not sure you're right that intentional fraud is required. It seems to me gross mismanagement sounds like recklessness or something. If you're going to think about this in sort of tort context, that strict liability ain't good enough, negligence probably ain't good enough, but I'm not sure that intentional wrongdoing is required for something to be gross mismanagement. It seems sort of like reckless conduct or something to me. Even in the context of this case, there's no allegation of any type of reckless misconduct. There is no allegation that someone acted recklessly or that they took action that was not in the best interest of HUD and or the housing authority. The allegation is that the housing authority took action that was not in the best interest of the private investor that was involved in this transaction. We submit that that is not whistleblowing within the context of the NDAA. Gotcha. Let me see if Judge Branch, do you have any questions? Yeah, let me follow up on that last point that you just made. You said there's no allegation of any gross management as to the agreement with HUD, but isn't that, in fact, what is at issue? That the allegation is that by mismanaging the private contract, it put the low-income tax credits at risk, thereby jeopardizing the HUD agreement. I mean, isn't that allegation that the gross management affects the HUD contract, the grant? That is the allegation, but the reality is, even in Appellant's complaint, is by the time she raised these issues, the HUD money had already been expended. The only thing that was at issue was whether or not these rich investors who buy these low-income tax housing credits could potentially lose the benefit of the deduction that they're going to get from the IRS, not that HUD would lose one red cent. Could HUD have clawed the money back at that point? I cannot answer that from the standpoint that there is nothing in the record with respect to what is included in the HUD grant, which is our very first point. What language in the HUD grant is the Appellant pointing to, to suggest that there has been some gross mismanagement? All right, let me ask one other question. Opposing counsel is arguing that the district court did not, in considering the motion to dismiss, did not consider the abuse of authority prong and the violation of law, rule, or regulation prong. Yes. What should we make of that argument? The district court did not, in fact, consider either of those prongs, so what should we do? I say you do nothing because no matter what you call it, whether you call it a gross mismanagement or abuse of discretion, what it is, in fact, is an internal protestation and a disagreement with your superiors about how a process should proceed between your employer, the housing authority, and a private investor. Okay. All right, so I think we have your case. Mr. Knapp, you have some time in rebuttal. Thank you, Your Honor. Thank you very much. Thank you very much. I think Judge Branch hit it on the head as to describing how, in its totality, the impact of this disclosure by our client constitutes gross mismanagement. I'll point out also that the low-income tax credits require a closing by a specific period of time, and if you don't, not only do you lose the grant itself, which is a grant to the agency, Atlanta Housing Authority, but you lose the ability for future grants and other projects for a flat period of time as a penalty for violating that rule of law. Secondly, the grant with HUD doesn't require the project to just go on for the low-income tax—I mean, the low-income units that are funded by HUD. It requires that these other two parts of the project also be completed. The middle-income mixed-use needs to be built, and they've got an obligation, and they require the developer also to go on and develop the private sector. You can't segregate out this one piece and say the money's been spent. HUD doesn't care. That's just not the case. The factual record needs to be developed on these issues. We've made sufficient allegations, and we should go forward. There is, in fact, the method that the agency chose to try to renegotiate is what I believe raises also to the point of gross negligence. That is, they were advocating that their prior approvals that had been made at a period prior to this new appointee's appearance as the chair or the head of the organization were not given. They were formal board-passed resolutions that had been authorized. The limited low-income tax credit application had been approved by Atlanta Housing Authority, and the tactic that they wanted to employ was deceitful. It was to deceive that, in fact, those approvals had been given. And that kind of action, which she, in fact, complained about both internally and then to the HR and then ultimately to the OIG, we believe fits the statute. The statute does not suggest that the disclosure has to go outside the organization. And, in fact, she was retaliated against. There's no question about it. That's all I have. Thank you very much. Very well. Judge Branch, any further questions? No. Very well. Thank you both so much. That case is submitted, and we'll move to the fourth and final case of the day.